**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| JOHN HARNISH, et al., on behalf of themselves and all others similarly situated,<br><br>                              Plaintiffs,<br>v.<br><br>WIDENER UNIVERSITY SCHOOL OF LAW, and DOES 1-20,<br><br>                              Defendants. | **OPINION**<br><br>Civ. No. 12-00608 (WHW) (CLW) |

**<u>Walls, Senior District Judge</u>**

Plaintiffs are alumni of Widener Law School who allege that the school violated consumer fraud statutes by misrepresenting the employment success of its graduates. Plaintiffs filed a class action complaint on behalf of themselves and similarly situated former Widener Law School students. They now seek the Court's certification of their proposed class under Federal Rules of Civil Procedure 23(a) and 23(b)(3). Decided without oral argument under Federal Rule of Civil Procedure 78(b), Plaintiffs' motion is denied.

**FACTUAL AND PROCEDURAL BACKGROUND**

The Court recited the facts of this case in its opinion of March 20, 2013, ECF No. 33, so only a brief version is recounted here. Widener Law School ("Widener" or "WLS") is based in Wilmington, Delaware and has a satellite campus in Harrisburg, Pennsylvania. Am. Compl. ¶ 27, ECF No. 8. Plaintiffs describe it as a "lower tier" law school with "one of the highest acceptance rates in the country." *Id.* ¶¶ 31, 48. Plaintiffs are six Widener alumni who graduated between 2008

1

**NOT FOR PUBLICATION**

and 2011.[1] *Id.* ¶ 1. Claiming that their Widener law degrees did not lead to satisfactory legal employment, Plaintiffs allege on behalf of themselves and those similarly situated that Widener violated consumer fraud laws through a "practice of publishing and reporting misleading job placement and salary statistics" to "induce students to enroll and/or stay enrolled" at Widener and pay its "artificially inflated tuition." *Id.* ¶¶ 1, 17-18, 20, 22, 24-25.

Plaintiffs' claims arise from Widener's marketing materials and reporting practices between 2005 and 2011. They allege that Widener's website promised that "[a]s a graduate of Widener Law, you'll join a network of more than 12,000 alumni . . . using their Widener Law degrees to pursue successful, rewarding careers." *Id.* ¶ 3. Plaintiffs assert that Widener published statistics "on its website that led students to believe that WLS successfully placed over 90% of its graduates in positions that required or at least used a law degree within nine months of graduation," including the following statistics:

a) "Graduates of the Class of 2004 had a 90% employment rate within nine months of graduation."

b) "Graduates of the Class of 2005 had a 90% employment rate within nine months of graduation."

c) "Graduates of the Class of 2007 had a 96% employment advanced degree rate within nine months of graduation."

d) "Employment within nine months of graduation of over 91% for Class of 2008."

e) "Employment within nine months of graduation of over 92% for Class of 2009."

f) "Graduates of the Class of 2010 had a 93% employment/advanced degree rate within nine months of graduation."

---

[1] Plaintiffs are John Harnish, WLS Class of 2009, Justin Schluth, WLS Class of 2010, Robert Klein, WLS Class of 2009, Gregory Emond, WLS Class of 2011, Ayla O'Brien, WLS Class of 2008, and Christina Marinakis, WLS Class of 2010. Am. Compl. ¶¶ 17-25. Plaintiffs Edward Gilson, Megan Shafranski, and Robert MacFadyen have withdrawn from the litigation. ECF Nos. 19, 50, 65.

2

**NOT FOR PUBLICATION**

*Id.* ¶ 35.

Plaintiffs assert that these statistics were misleading because Widener did not disclose that the employment rates included "part time legal, law-related and non-legal positions," such that "a graduate could be working in *any* capacity in *any* kind of job, no matter how unrelated to law – and would be deemed employed and working in a career 'using' the WLS law degree." *Id.* ¶¶ 36-37 (emphasis in original). Among other things, Plaintiffs also allege that "WLS did not disclose that a sizeable percentage of WLS graduates did not respond to [its graduate employment surveys], when, presumably, a high percentage of those graduates were not placed successfully." *Id.* ¶ 36. Plaintiffs indicate that "in or about early 2012," Widener "took certain remedial measures" and modified its website to provide more specific employment data. *Id.* ¶ 47. After this update, the website stated:

> Graduates of the Class of 2010 had a 93% employment / advanced degree program participation rate. This rate includes full and part time legal, law-related and non-legal positions as well as advanced degree program participation within nine months of graduation. For more information, please download a comprehensive summary of employment statistics (PDF).

*Id.*

Beyond the website and other marketing materials, Plaintiffs also claim that Widener misled them by "reporting its misleading placement rates and salary statistics to third parties such as *U.S. News* and the ABA." *Id.* ¶ 38. Plaintiffs contend that Widener's employment statistics "helped to artificially boost WLS's *U.S. News* ranking because this data constitutes 18 percent . . . of a law school's ranking." *Id.* ¶ 39. Plaintiffs explain that this false reporting was detrimental because "prospective law students rely upon" the *U.S. News* rankings to make their law school decisions. *Id.* ¶ 40.

3

**NOT FOR PUBLICATION**

Plaintiffs' two causes of action allege that Widener violated the New Jersey and Delaware Consumer Fraud Acts by engaging "in a pattern and practice of knowingly and intentionally making numerous false representations and omissions of material facts, with the intent to deceive and fraudulently induce reliance by Plaintiffs and the members of the Class." *Id.* ¶¶ 75, 90. Specifically, Plaintiffs claim Widener violated the New Jersey and Delaware Consumer Fraud Acts by making the following "false representations and omissions":

a) Stating false placement rates during the recruitment and retention process, including that approximately 90-95 percent of WLS graduates secured employment within nine months of graduation;

b) Manipulating post-graduate employment data, so as to give the appearance that the overwhelming majority of recent graduates secure full-time, permanent employment for which a J.D. is required or preferred;

c) Disseminating false post-graduate employment data and salary information to various third-party data clearinghouses and publications, such as the ABA and *US News*;

d) Making deceptive and misleading statements, representations and omissions concerning WLS's reputation with potential employers;

e) Making deceptive and misleading statements, representations and omissions concerning the value of a WLS degree;

f) Making deceptive and misleading statements, representations and omissions concerning the pace at which recent graduates can obtain gainful employment in their chosen field; and

g) Causing students to pay inflated tuition based on materially misleading statements, representations and omissions, including, specifically that approximately 90-95 percent of WLS graduates secure gainful employment.

*Id.* Among other things, Plaintiffs seek injunctive relief against Widener's "fraudulent and deceptive business practices" and "restitution and disgorgement . . . totaling $75 million," which they contend is "the difference between the inflated tuition paid by Class members . . . and the true value of a WLS degree." Pr. for Rel. ¶¶ 1, 3.

**NOT FOR PUBLICATION**

The Court denied Widener's motion to dismiss Plaintiffs' claims on March 20, 2013. Opinion, ECF No. 33. Plaintiffs now move to certify the following class under Federal Rules of Civil Procedure 23(a) and 23(b)(3):

> All persons who enrolled at Widener University School of Law and were charged full or part-time tuition within the statutory period for the six-year period prior to the date the Complaint in this action was filed through the date the Class is certified.

Pls.' Mem. 21, ECF No. 94-1. Widener opposes certification. Def.'s Opp., ECF No. 97.

## LEGAL STANDARD

"The class action is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432 (2013) (internal quotation omitted). To obtain class certification, a plaintiff "must affirmatively demonstrate his compliance" with the four requirements of Federal Rule of Civil Procedure 23(a) and at least one of the provisions of Rule 23(b). *Id.* Under Rule 23(a), a class may be certified only if:

> (1) the class is so numerous that joinder of all members is impracticable,
>
> (2) there are questions of law or fact common to the class,
>
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and
>
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). These "four requirements—numerosity, commonality, typicality, and adequate representation—effectively limit the class claims to those fairly encompassed by the named plaintiff's claims." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2550 (2011) (internal quotations omitted). Rule 23(b) sets out three additional provisions, at least one of which must be satisfied. Here Plaintiffs invoke Rule 23(b)(3), which permits class certification when a court finds

5

that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3).

Actual, not presumed, conformance with the Rule 23 requirements is essential. *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 591 (3d Cir. 2012). To that end, when evaluating a motion for class certification, a court "is obligated to probe behind the pleadings when necessary" and "conduct a rigorous analysis of the evidence in support of certification." *Byrd v. Aaron's Inc.*, 784 F.3d 154, 163, 174 (3d Cir. 2015), *as amended* (Apr. 28, 2015). "Frequently that 'rigorous analysis' will entail some overlap with the merits of the plaintiff's underlying claim. That cannot be helped." *Dukes*, 131 S. Ct. at 2551. Where a party seeks class certification under Rule 23(b)(3), the court has a "duty to take a 'close look' at whether common questions predominate over individual ones." *Comcast*, 133 S. Ct. at 1432 (quoting *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 623-24 (1997)).

## DISCUSSION

Plaintiffs argue that their proposed class meets the Rule 23(a) numerosity, commonality, typicality, and adequacy requirements as well as the Rule 23(b)(3) requirements of predominance and superiority. Pls.' Mem. 3, ECF No. 94-1. Defendant Widener contests certification, arguing that the proposed class does not satisfy Rule 23(b)(3). Defs.' Opp. 2, ECF No. 97. First, Widener contends that the proposed class is not readily ascertainable. Def.'s Opp. 16-17. Second, for several reasons, Widener argues that it does not meet the Rule 23(b)(3) predominance standard. *Id.* 17-43. Finally, Widener asserts that Plaintiffs fail to address necessary choice of law questions. *Id.* 43-45. Although Widener's arguments are focused, the Court must conduct rigorous analysis as to each Rule 23 requirement.

**NOT FOR PUBLICATION**

### 1. The Proposed Class Is Ascertainable

Widener argues that Plaintiffs' proposed class is not ascertainable. Def.'s Mem. 16. "A plaintiff seeking certification of a Rule 23(b)(3) class must prove by a preponderance of the evidence that the class is ascertainable." *Byrd*, 784 F.3d at 163. "The ascertainability inquiry is two-fold, requiring a plaintiff to show that: (1) the class is 'defined with reference to objective criteria'; and (2) there is 'a reliable and administratively feasible mechanism for determining whether putative class members fall within the class definition.'" *Id.* (quoting *Hayes v. Wal-Mart Stores, Inc.*, 725 F.3d 349, 355 (3d Cir. 2013)). The ascertainability requirement "does not mean that a plaintiff must be able to identify all class members at class certification—instead, a plaintiff need only show that 'class members can be identified.'" *Byrd*, 784 F.3d at 163 (quoting *Carrera v. Bayer Corp.*, 727 F.3d 300, 308 n.2 (3d Cir. 2013)). "If class members are impossible to identify without extensive and individualized fact-finding or 'mini-trials,' then a class action is inappropriate." *Marcus*, 687 F.3d at 593.

Widener argues that the proposed class is not ascertainable because it is "overbroad," encompassing "individuals who were never exposed to the allegedly offending marketing materials, were not harmed and who have no legally cognizable claim under the NJCFA." Def.'s Opp. 16-17. Plaintiffs respond that available records "identify all enrolled, tuition paying students for the duration of the class period," thereby "readily identify[ing] every member" of the proposed class. Pls.' Reply 5, ECF No. 99.

The "ascertainability inquiry is narrow," and it "only requires the plaintiff to show that class members can be identified." *Byrd*, 784 F.3d at 165 (quoting *Carrera*, 727 F.3d at 308 n.2)). Plaintiffs' proposed class includes "[a]ll persons who enrolled in Widener University School of Law and were charged full or part-time tuition" within a specified period. Pls.' Mem. 21. This

definition has clear objective criteria: class members must have been (1) enrolled at Widener and (2) charged tuition (3) during the set time frame. Widener's records provide a reliable and administratively feasible way to identify every class member. No mini-trials will be necessary.

Whether the proposed class includes individuals who were not exposed to Widener's alleged misrepresentations, or who were not harmed, is irrelevant for ascertainability. *See Byrd*, 784 F.3d at 167-68 (finding that district court "abused its discretion in determining that the proposed classes were not ascertainable because they were 'overly broad'"); *Grandalski v. Quest Diagnostics Inc.*, 767 F.3d 175, 184-85 (3d Cir. 2014) ("Our cases that have addressed ascertainability have focused on whether objective records could readily identify class members."). "To the extent Defendant[] meant to challenge any potential differences between the proposed class representatives and unnamed class members, such differences should be considered within the rubric of the relevant Rule 23 requirements—such as adequacy, typicality, commonality, or predominance." *Byrd*, 784 F.3d at 169. Because each student who enrolled at Widener during the class period can be identified, the proposed class is ascertainable.

    **2. Numerosity Is Satisfied**

Rule 23(a)(1) requires the class to be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). There is "no minimum number of members needed for a suit to proceed as a class action." *Marcus*, 687 F.3d at 595. Courts must examine "the specific facts of each case," but "generally if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met." *Id.* (citations omitted). Because Plaintiffs' proposed class includes "thousands of former Widener students," Pls.' Mem. 23, the numerosity requirement is satisfied.

**NOT FOR PUBLICATION**

### 3. The Commonality Requirement Is Satisfied But Predominance Is Not

Rule 23(a)(2) is satisfied because common questions exist among all proposed class members, but Rule 23(b)(3) is unmet because the common questions do not predominate over questions individual to class members.

Rule 23(a)(2) requires Plaintiffs to show that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury.'" *Dukes*, 131 S.Ct. at 2551 (quoting *General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 157 (1982)). To make this showing, class claims "must depend upon a common contention . . . of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id*. "For purposes of Rule 23(a)(2), even a single common question will do." *Id.* at 2556 (quotations and alterations omitted).

In a Rule 23(b)(3) class action, which Plaintiffs seek to bring here, common questions must not only exist but also predominate over questions affecting only individual class members. Fed. R. Civ. P. 23(b)(3). This predominance requirement "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods.*, 521 U.S. at 623. "To assess predominance, a court at the certification stage must examine each element of a legal claim 'through the prism' of Rule 23(b)(3)." *Marcus*, 687 F.3d at 600 (quoting *In re DVI, Inc. Sec. Litig.*, 639 F.3d 623, 630 (3d Cir. 2011)). A plaintiff must "demonstrate that [each] element of [each legal claim] is capable of proof at trial through evidence that is common to the class rather than individual to its members." *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 311 (3d Cir. 2009).

**NOT FOR PUBLICATION**

### a. There Are Questions Common to the Proposed Class

Plaintiffs list a litany of questions which they claim are common to all proposed class members. These questions are whether:

(1) Defendant inflated its graduate employment and salary statistics through improper collection processes;

(2) Defendant inflated its graduate employment and salary statistics through improper aggregation methods;

(3) Defendant disclosed disaggregated statistics in a way that was readily available to students;

(4) a reasonable student who was exposed to Widener's misrepresentations would have believed that Widener's employment rate included temporary and non-legal jobs;

(5) Widener knew that it was misleading students about its graduate employment rate and salary statistics; and

(6) Widener was able to charge higher tuition based, in part, on its consistently inflated graduate employment statistics.

Pls.' Mem. 24-25. The Court need not analyze the commonality of each of these questions. The class claims proceed from a core common contention that Widener engaged in a consistent practice of disseminating misleading employment statistics to prospective and enrolled students. Pls.' Mem. 1-3. Resolving the truth or falsity of this common contention will drive resolution of this litigation as to all class members. The Rule 23(a)(2) commonality requirement is satisfied.

The Court's analysis does not end there, however, because common questions must also predominate over individual questions to warrant class certification under Rule 23(b)(3).

### b. Common Questions Do Not Predominate Over Individual Questions

Plaintiffs have not established the predominance of common questions in this case. Plaintiffs bring claims for consumer fraud under the New Jersey Consumer Fraud Act and the Delaware Consumer Fraud Act. To establish predominance, Plaintiffs must show that each element

10

of their NJCFA and DCFA claims can be proven by "evidence that is common to the class rather than individual to its members." *Hydrogen Peroxide*, 552 F.3d at 311. One element that must be established for both an NJCFA claim and a DCFA claim is loss or damages. *Int'l Union of Operating Engineers Local No. 68 Welfare Fund v. Merck & Co.*, 192 N.J. 372, 389 (2007) (To state an NJCFA claim, plaintiff must allege "(1) unlawful conduct . . . ; (2) an ascertainable loss . . . ; and (3) a causal relationship between the defendants' unlawful conduct and the plaintiff's ascertainable loss."); *Yarger v. ING Bank, FSB*, 285 F.R.D. 308, 326 (D. Del. 2012) ("To prove a claim under the DCFA, a plaintiff must show: (1) that [the defendant's] advertisements contained a false representation and/or omitted a material fact; (2) that [the defendant] intended for Plaintiffs to rely on the representation or omission; and (3) damages."). Plaintiffs have not shown that they can prove the proposed class members' damages by common evidence.

Plaintiffs' theory of damages is that Widener's alleged misrepresentations inflated its tuition prices above what they should have been, and all Widener students suffered damages when they paid the extra, "inflated" tuition amount. Pls.' Mem. 17-18. Plaintiffs intend to prove damages on a classwide basis by using an expert statistical analysis to quantify the alleged tuition inflation. *Id.* at 18. They advance a regression analysis which, according to their expert, uses "data from 64 private law schools from the bottom two ranked tiers listed by *U.S. News & World Report*" to measure "the impact of employment rate on Widener's tuition prices while controlling for other factors." *Id.* From this analysis, Plaintiffs' expert concludes that "[t]o the extent that law school job placement statistics are overstated or inflated in publicly distributed information including advertisements and/or websites . . . they will be reflected in higher law school tuition costs for JD programs relative to tuition costs that reflect accurate job placement statistics." *Id.* at 19. In sum, Plaintiffs intend their expert's analysis to prove that all class members paid a certain extra amount

of tuition due to Widener's alleged misrepresentations about its graduates' employment success. This theory of common damages is unacceptable for two reasons.

First, Plaintiffs' theory that all Widener students sustained corresponding damages ignores the reality that many students obtained the full-time legal jobs they sought when enrolling at Widener and paying its tuition. The Court recognizes that Plaintiffs and other proposed class members may have experienced ascertainable losses as a result of Widener's alleged misrepresentations that they were highly likely to get full-time legal jobs. But other Widener students, whom Plaintiffs seek to include in the class, actually got the advertised jobs. Am. Compl. ¶ 47 (stating that 56% of 2010 graduates who responded to Widener's employment survey "were employed in full-time legal work"). The loss, if any, which those students may have experienced as a result of Widener's alleged misrepresentations is different from the loss incurred by students who did not obtain full-time legal employment. As such, individual questions predominate over common questions regarding the loss each proposed class member sustained.

Second, Plaintiffs' method of proving classwide damages relies on a "fraud on the market" theory which New Jersey courts have rejected outside the federal securities fraud context. In *International Union*, the New Jersey Supreme Court considered an argument nearly identical to Plaintiffs' argument here: that "defendant's marketing scheme created an effect on the price of Vioxx [a pharmaceutical] such that the ascertainable loss element of [the NJ]CFA may be proven, on a class-wide basis, by reliance on expert analysis alone." *Int'l Union*, 192 N.J. at 391. The Court rejected the plaintiff's attempt to prove common damages through expert price inflation analysis, finding that "rely[ing] on a single expert to establish a price effect in place of a demonstration of an ascertainable loss . . . would indeed be the equivalent of fraud on the market, a theory we have not extended to [NJ]CFA claims." *Id.* at 392.

**NOT FOR PUBLICATION**

Plaintiffs argue that their expert's analysis is acceptable because it "does not presuppose price inflation," but rather employs a regression analysis to identify "a significant, positive price relationship" between advertised employment rates and law school tuition levels. Pls.' Reply 13-14. Although multiple regression analysis is a viable method of economic analysis,[2] Plaintiffs' theory of damages still relies on a market dynamic that they have not proved to exist. Whereas securities markets are theorized to reflect material public information in security prices, Plaintiffs offer no evidence that a similar market dynamic adjusts law school tuition levels to reflect public disclosures about the schools' employment rates. *See In re Schering-Plough Corp. Intron/Temodar Consumer Class Action*, Civ. No. 06- 5774, 2009 WL 2043604, at *21 (D.N.J. July 10, 2009) ("Whereas the price of securities are set by the price at which buyers are willing to buy the securities and sellers are willing to sell, here, . . . Plaintiffs' theory of injury relies upon the faulty assumption that the prices of [pharmaceuticals] fluctuate in a similar manner"); *see also Kaufman v. i-Stat Corp.*, 165 N.J. 94, 113-18 (2000) (discussing the Efficient Capital Markets Hypothesis and declining to extend fraud on the market theory to New Jersey common law fraud actions).

As a means of identifying common damages, Plaintiffs' regression analysis depends on the assumption that law school tuition prices accurately reflect the schools' advertised employment rates. Pls.' Mem. 19. That is, the regression analysis purports to calculate ascertainable loss by identifying the difference between what Widener's tuition was with the alleged misrepresentations and what it would have been without them. The problem with this analysis is that Widener sets its tuition prices, not active traders in a market for seats in its classes. The regression analysis may

---

[2] Plaintiffs advance this Court's opinion in *In re Bulk (Extruded) Graphite Products Antitrust Litig.*, Civ. No. 02-6030 (WHW), 2006 WL 891362 (D.N.J. Apr. 4, 2006), in support of their attempt to prove common damages by regression analysis. This case does not aid Plaintiffs. It deals with measuring damages from an antitrust conspiracy and offers no support for applying a "fraud on the market" theory in a consumer fraud action alleging that misrepresentations caused price inflation.

13

show that without the alleged misrepresentations, according to prevailing law school tuition levels, Widener *should* have had lower tuition prices, but it does not show that it *would* have had lower tuition prices. Plaintiffs' regression analysis is insufficient to prove that the proposed class members sustained common damages from Widener's alleged misrepresentations.[3]

Because Plaintiffs have not shown that the damages elements of their NJCFA and DCFA claims can be established by common proof, Plaintiffs' proposed class cannot be certified under Rule 23(b)(3).

### 4. Typicality Is Not Satisfied

Plaintiffs have also failed to demonstrate that the named plaintiffs' claims are "typical of the claims . . . of the proposed class." Fed. R. Civ. P. 23(a)(3). "Typicality ensures the interests of the class and the class representatives are aligned 'so that the latter will work to benefit the entire class through the pursuit of their own goals.'" *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 182-83 (3d Cir. 2001), *as amended* (Oct. 16, 2001). "[T]he proper consideration in assessing typicality [] include[s] three distinct, though related, concerns: (1) the claims of the class representative must be generally the same as those of the class in terms of both (a) the legal theory advanced and (b) the factual circumstances underlying that theory; (2) the class representative must not be subject to a defense that is both inapplicable to many members of the class and likely to become a major focus of the litigation; and (3) the interests and incentives of the representative must be sufficiently aligned with those of the class." *In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 599 (3d Cir. 2009). "[F]actual differences will not render a claim atypical if the claim arises from the same event or practice or course of conduct that gives

---

[3] The Court acknowledges Plaintiffs' contention that "Widener has not produced any information about tuition prices, how it sets those prices, or any Widener price analyses." Pls.' Reply 17. Such information is relevant to class discovery and should be produced, if available, to aid Plaintiffs in assessing whether putative class members' damages can be proved by common evidence.

**NOT FOR PUBLICATION**

rise to the claims of the class members, and if it is based on the same legal theory." *Beck v. Maximus, Inc.*, 457 F.3d 291, 296 (3d Cir. 2006) (internal quotations omitted).

It is not clear that all members of the proposed class were exposed to the false representations or omissions Plaintiffs allege. Plaintiffs' core allegation is that Widener disseminated misleading employment statistics "between 2005 and 2011." Am. Compl. ¶ 5. The proposed class definition, however, includes Widener students who enrolled "through the date that this Class is certified," Pls.' Mem. 21, thereby including students who enrolled in 2012, 2013, and 2014. The amended complaint itself indicates that Widener changed its reporting of employment statistics "in or about early 2012" and published a "comprehensive summary" of employment data on its website. Am. Compl. ¶ 47. Because the factual circumstances underlying claims of students who enrolled at Widener after 2011 are markedly different from Plaintiffs' claims, Plaintiffs' claims are not typical of the class claims as a whole.

It is also possible that putative class members have interests which do not align with Plaintiffs' interests. Widener alumni who are pursuing legal careers in which their professional status is, to some degree, linked to the reputation of their law school may not want Widener to be held liable for violating consumer fraud laws. In other cases where a defendant's liability would benefit some class members but hurt the interests of others, courts have found class certification inappropriate. *See, e.g.*, *Bieneman v. City of Chicago*, 864 F.2d 463, 465 (7th Cir. 1988); *Phillips v. Klassen*, 502 F.2d 362, 366-67 (D.C. Cir. 1974).

**NOT FOR PUBLICATION**

## CONCLUSION

The Court need not address the other Rule 23 factors requisite to class certification. Plaintiffs' motion is denied. An appropriate order follows.


Date: July 1, 2015

**/s/ William H. Walls**
United States Senior District Judge
